IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |  | |
|---|---|---|---|
| SYLVESTER ANTHONY SHORTRIDGE, #196678, | ) ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | CASE NO. 2:20-CV-997-ECM-SMD | |
| JEFFERSON S. DUNN, et al., | ) ) ) | | |
| Defendants. | ) | | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

**I.    INTRODUCTION**

Plaintiff Sylvester Anthony Shortridge, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging that, while incarcerated at Easterling Correctional Facility in April 2020, former Alabama Department of Corrections ("ADOC") Commissioner Jefferson Dunn[1], Warden John Crow, Warden Monica McCoy, and Correctional Officer George Jones violated his Eighth Amendment rights. Doc. 1. Specifically, he claims these Defendants failed to protect him from an assault by another inmate and "intentionally creat[ed] a health safety and security hazard due to overcrowding." *Id*. at 3. As relief, he seeks monetary damages and "a petition for release order to be issued." *Id*. at 4.

---

[1] John Hamm has replaced Jefferson Dunn as Commissioner of the Alabama Department of Corrections. Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Hamm is automatically substituted as defendant in his official capacity. Former ADOC Commissioner Jefferson Dunn remains a defendant in his individual capacity. The Clerk is DIRECTED to update the docket accordingly.

On January 8, 2021, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. Doc. 8. On June 8, 2021, Defendants jointly filed a Special Report (Doc. 24), in which they seek summary judgment and provide supporting evidentiary materials (Docs. 24-1 through 24-5). Thereafter, Defendants filed supplements to their Special Report (Docs. 30, 35) with additional evidentiary materials (Docs. 30-1 through 30-3, 35-1, 35-2). On November 8, 2021, the Court directed Plaintiff to respond to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 36. Thereafter, Plaintiff filed a response (Doc. 39) with supporting evidentiary materials (Docs. 39-1, 39-2).

In the November 8, 2021 Order, the parties were notified that "the Court may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the [Special] Report with supplements and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." Doc. 36 at 2–3. Pursuant to that notice, the undersigned will now construe Defendants' Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendants.

II.   **SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."

3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III. RELEVANT FACTS[2]

The following facts derive from Plaintiff's verified Complaint (Doc. 1); the sworn evidentiary materials proffered by Defendants (Docs. 24-1 through 24-5, 30-1 through 30-3, 35-1, 35-2); and Plaintiff's verified affidavits in response (Docs. 39-1, 39-2).[3]

The Complaint provides that, in April 2020, while in the cafeteria at Easterling Correctional Facility, Plaintiff "was doused in [his] eyes/face with a poison[ous] chemical" by another inmate. Doc. 1 at 3. Plaintiff claims that "ADOC in its failure to reduce its excessive over population as advised by federal court order – created intentionally the enviro[n]ment for said incident to occur, and due to understaffing – created an enviro[n]ment that couldn't police the situation." *Id*. He further claims that, at the time of the assault, he was "classified to be housed at an honor camp/work release" and "[i]f [he] would have been housed [at] a Level II institution . . . this assault wouldn't have ever occur[r]ed." *Id*.

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[3] Although Plaintiff filed an additional responsive filing (Doc. 39), the Court cannot consider any statements therein in deciding summary judgment because it is neither sworn nor verified in accordance with 28 U.S.C. § 1746. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)).

Defendants' Special Report provides that, on April 14, 2020, another inmate threw an unknown substance into Plaintiff's face. Docs. 24-1 through 24-4. At approximately 4:55 P.M., Sergeant LaKeith Thompkins, who was monitoring the kitchen at that time, observed Plaintiff with his hands covering his face and screaming that someone had thrown an unidentified substance in his eye. Doc. 24-1. The security staff in the kitchen and Defendant Jones responded to the incident and escorted Plaintiff to the Healthcare Unit to be medically assessed and treated. *Id.*; Doc. 24-3. At 5:00 P.M., Registered Nurse Diane Horan conducted a medical assessment of Plaintiff and noted redness to his face, neck, and chest. Doc. 24-1. At approximately 6:19 P.M., Plaintiff was transported to Southeast Medical Center in Dothan, Alabama for further medical treatment. *Id*.

Upon questioning, Plaintiff's assailant admitted to throwing the substance in Plaintiff's face. *Id*. He stated that he and Plaintiff were in a relationship, Plaintiff had become abusive towards him, and he was tired of it. *Id*. That same evening, he was placed in the Restrictive Housing Unit pending disciplinary action for Inmate-on-Inmate Assault. *Id*. Defendants each aver that they had no knowledge whatsoever of any threat to Plaintiff prior to the assault. Docs. 30-1 through 30-3. They further aver that the incident "happened in a split second"; "no staff had forewarning"; and "[t]here was no possible way that any staff member could have reacted fast enough to have stopped th[e] assault." Docs. 35-1, 35-2. They repeatedly deny that overcrowding or understaffing caused the assault. Docs. 24-2 through 24-4, 30-2, 30-3, 35-1, 35-2.

Former Commissioner Dunn avers:

6

> Since my appointment to the position of Commissioner in 2015, my executive staff and I have worked diligently to manage the overall conditions of all Alabama prisons (including Easterling), increase security staffing levels across the state, decrease the levels of inappropriate violence, and decrease the amount of contraband coming into the facilities that may contribute to acts of violence among the inmate population.

Doc. 24-5 at 2–3. He provides a non-exhaustive list of numerous safety measures implemented during his time as Commissioner and notes that the ADOC inmate population reduced from 24,502 to 18,285 during that time. *Id*. at 3–7.

In response, Plaintiff reiterates that, due to his custody classification, he should have been housed in a different facility at the time of the assault. Doc. 39-2. However, he was neither reclassified nor transferred to another institution until 2022. *Id*. He avers that Easterling was "seriously overcrowded" and "seriously unstaffed." *Id*. At the time of his assault, only two officers were inside the kitchen, "[w]hich [permitted his assailant] to go undetected an[d] throw liquid oven cleaner in [his] face." *Id*. Defendants were aware of a prior instance in which another inmate was "assaulted with some form of liquid substance thrown upon [him]." *Id*. Additionally, "[w]hile housed at Easterling[,] the staff didn't have any programs that taught against . . . homosexual activities." *Id*.; *see also* Doc. 39-1.

## IV.    DISCUSSION

### a.    The Complaint does not state any factual allegations regarding any of the named Defendants.

As an initial matter, Plaintiff's Complaint does not state any factual allegations regarding Defendants Dunn, Crow, McCoy, or Jones. *See generally* Doc. 1.[4] The Eleventh Circuit has demonstrated that dismissal of a defendant is proper where a complaint fails to state any allegations that associate the named defendant with a constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. Puerto Rico Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (citation omitted).

Because Plaintiff's pleading fails to state any allegations associating Defendants Dunn, Crow, McCoy, or Jones with a constitutional violation—indeed, it makes no mention of these Defendants whatsoever—Defendants are entitled to summary judgment on this basis. *See, e.g., Carey v. Mason*, No. 2:13-CV-705-MHT, 2016 WL 5844339, at *8 (M.D. Ala. Aug. 18, 2016) (granting summary judgment for defendant where plaintiff "ma[de] no allegations against him nor [did] he indicate this defendant was personally involved in the constitutional violations about which he complains"). However, even

---

[4] Plaintiff's Complaint contains only a single allegation against "ADOC." Doc. 1 at 3. However, "[t]he ADOC is not subject to suit or liability under § 1983." *Billingsley v. Daniels*, No. 2:16-CV-748, 2017 WL 1652615, at *1 (M.D. Ala. Mar. 13, 2017).

construing Plaintiff's *pro se* pleading extremely liberally and interpreting his allegation against the ADOC as one against Defendants, Defendants are further entitled to summary judgment on additional grounds.

      **b.** **To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.**

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.[5] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

---

[5] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n. 3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

### c. Plaintiff has failed to establish a genuine issue of material fact as to an Eighth Amendment claim against Defendants in their individual capacities.

The Eighth Amendment imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). However, it is well-established that not every injury suffered by an inmate at the hands of another "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Id*. at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). To state a viable claim under the Eighth Amendment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (*quoting Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).

A constitutional violation occurs only if a prison official is deliberately indifferent to a known risk of objectively, sufficiently serious harm to an inmate. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection."). A risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he . . . also draw[s] th[at] inference." *Farmer*, 511 U.S. at 837 (emphasis added). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to establish liability. *Id*. at 838.

10

Moreover, the risk of harm to the inmate must be a "strong likelihood, rather than a mere possibility." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (citation omitted).

The evidence before the Court fails to demonstrate that any Defendant knew Plaintiff was at risk of serious harm prior to the assault. Defendants have each sworn that they had no knowledge whatsoever of any threat to Plaintiff prior to the assault. Docs. 30-1 through 30-3. They further aver that the incident "happened in a split second"; "no staff had forewarning"; and "[t]here was no possible way that any staff member could have reacted fast enough to have stopped th[e] assault." Docs. 35-1, 35-2. Plaintiff has proffered no evidence to the contrary. Instead, he simply states that Defendants were aware of a prior instance in which another inmate was "assaulted with some form of liquid substance thrown upon [him]." Doc. 39-2. However, a vague prior incident that occurred at an unidentified time, in an unidentified location, with no demonstrable connection to Plaintiff does not raise Plaintiff's risk of harm to a "strong likelihood, rather than a mere possibility." *See Edwards*, 867 F.2d at 1276.

Moreover, to the extent Plaintiff purports to establish a known risk of general inmate-on-inmate violence at Easterling, he has not done so. In *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), a plaintiff averred that he had personally witnessed 15 gang-related inmate stabbings and had made several requests to be transferred to another dorm due to his being an "over-rated gang affiliated block" prior to an incident in which he was stabbed at St. Clair Correctional Facility. *Id*. at 1231. The Eleventh Circuit found that evidence insufficient to establish deliberate indifference based on a general risk of inmate-on-inmate violence, noting that the record "at most show[ed] that inmates at St. Clair faced

some risk of assaults by fellow prisoners, but . . . some risk of harm is insufficient." *Id*. at 1235.

Similarly, in *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), the record demonstrated that 33 assaults, some of which involved weapons, occurred at Holman Correctional Facility over a three-and-a-half-year period prior to an incident in which an inmate attacked the plaintiff with a box-cutter blade. *Id*. at 1293, 1300. The Eleventh Circuit held that evidence did not establish a substantial risk of serious harm, as it was "hardly sufficient to demonstrate that Holman was a prison 'where violence and terror reign.'" *Id*. at 1299–1300 (citing *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005)).

In this case, Plaintiff has provided only conclusory allegations of overcrowding and understaffing[6], as well as one prior incident in which an inmate was assaulted—at an unknown time and unknown location—with a liquid substance similar to Plaintiff. This sparse evidence does not support the conclusion "that serious inmate-on-inmate violence was so pervasive that it constitute[d] a substantial risk of serious harm to which defendants were deliberately indifferent." *Johnson v. Lang*, No. 19-14278, 2022 WL 2734421, at *3

---

[6] *See Fuqua v. Dunn*, No. 2:17-CV-389-RAH, 2020 WL 3273235, at *8 (M.D. Ala. May 22, 2020):

> Fuqua's assertion that overcrowding and understaffing created a security hazard at Tutwiler is insufficient, standing alone, to state a claim of constitutional magnitude. Overcrowding in prisons is not per se unconstitutional and there are no specific factual allegations in the amended complaint which demonstrate conditions at Tutwiler during the relevant time period exceeded constitutional limits due to overcrowding. *See Parrish v. Alabama Dep't. of Corr.*, 156 F.3d 1128, 1129 n. 1 (11th Cir. 1998) (citing *Rhodes v. Chapman*, 425 U.S. 337, 347–48 (1981)). "Similarly, [even if a limited number of officers were on duty at the time of the attack,] there is nothing inherently wrong with having only a few staff members supervise inmates." *Laube v. Haley*, 234 F. Supp. 2d 1227, 1245 (M.D. Ala. 2002).

(11th Cir. July 14, 2022) (citing *Marbury*, 936 F.3d at 1234). Indeed, "occasional, isolated attacks by one prisoner on another" are insufficient to establish the "[e]xtreme levels of prisoner-on-prisoner violence [that] may create a substantial risk of serious harm." *Id*. at 3 (citing *Purcell*, 400 F.3d at 1320).

Thus, because Plaintiff has failed to produce evidence that Defendants knew of a strong likelihood of substantial harm to him prior to his assault, their failure to prevent the assault does not constitute an Eighth Amendment violation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

### d.   Plaintiff has failed to state a claim based on his custody classification.

Finally, to the extent Plaintiff purports to state any additional constitutional claims based on his custody classification, he is not entitled to a particular custody classification or assignment to any particular prison. *See Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006) (citing *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (holding that the United States Constitution affords no liberty interest in a prisoner's custody classification) and *Meachum v. Fano*, 427 U.S. 215, 224–26 (1976) (holding that a prisoner does not have a liberty interest in assignment to any particular prison, regardless of whether the conditions of one prison are "much more disagreeable" than another)). Accordingly, his allegations that he should have been housed at a "Level II institution" rather than Easterling fail to state a claim against Defendants.

## V.   CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

13

1. Defendants' Special Report (Doc. 24), which the Court construes as a motion for summary judgment, be GRANTED;

2. Judgment be ENTERED in favor of Defendants; and

3. This case be DISMISSED with prejudice.

It is further ORDERED that, on or before **February 6, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 23rd day of January, 2024.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE